## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ARMA LENE "TONI" REDO,            )
                                  )
     Plaintiff,                   )
                                  )
v.                                )        Case No. CIV-23-455-D
                                  )
STATE FARM FIRE AND CASUALTY      )
COMPANY,                          )
                                  )
     Defendant.                   )

## ORDER

Before the Court is Defendant State Farm Fire and Casualty Company's Motion for

Summary Judgment and Brief in Support [Doc. No. 33]. Plaintiff filed a response [Doc.

No. 38], and State Farm filed a reply [Doc. No. 41]. The matter is fully briefed and at issue.

## INTRODUCTION

Plaintiff alleges that her property suffered storm damage on or about April 15, 2022,

during the term of Plaintiff's home insurance policy issued by State Farm. Plaintiff first

submitted a property damage claim on July 19, 2022, and allegedly reported that she did

not know the date of loss. However, State Farm contends that Plaintiff reported July 19 as

her date of loss and subsequently attempted to change the date of loss to April 15. Upon

inspecting Plaintiff's property, State Farm's claim representative found evidence of interior

water damage to several areas of the home, but did not find hail damage to the roof that

would be consistent with a July 19 date of loss.  Ultimately, State Farm paid $2,638.29 for

the estimated repairs for interior water damage (minus Plaintiff's deductible and depreciation)[1], but it did not pay for any hail or storm damage to the roof.

Thereafter, Plaintiff filed this action, alleging that State Farm breached its contract with Plaintiff by failing to pay for storm damage covered under the home insurance policy. Further, Plaintiff alleges that State Farm breached its duty of good faith and fair dealing when it "focused myopically on a fabricated date of loss; failed to consider significant hail storms near the time that [Plaintiff] noticed damage that she submitted as a hail and water leak claim; ignored [Plaintiff's] statement that she did not know the date of loss; misrepresented to [Plaintiff] there was no hail damage (despite known hail damage); violated the twenty-four month coverage period derived from 36 O.S. § 1250.5(7); required a second claim with another deductible over a fictitious date of loss issue; and imposed an extracontractual 'exclusion' of hail 'damage.'" [Doc. No. 38, at 24-25].

In the present motion, State Farm seeks summary judgment in its favor with respect to Plaintiff's claims of breach of contract, bad faith, and punitive damages.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In deciding whether summary judgment is proper, courts do not weigh the evidence and determine the truth of the matter asserted, but determine only whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A

---

[1] An additional $11,716.53 was available to Plaintiff as recoverable depreciation.

material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute is genuine if the facts and evidence are such that a reasonable juror could return a verdict for either party. *Id.* In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. *See Sylvia v. Wisler*, 875 F.3d 1307, 1328 (10th Cir. 2017).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); FED. R. CIV. P. 56(c)(1)(A). The relevant inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## UNDISPUTED MATERIAL FACTS

Plaintiff's property was insured by State Farm, Policy No. 36-CB-DO13-8. The policy covered accidental direct physical loss to the property; and excluded coverage for various perils, to include "wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown." [Policy, Doc. No. 33-2, at 24, 27]. The

3

policy was in effect from January 31, 2022, to January 31, 2023 [Doc. No. 33-2, at 6].

Plaintiff reported a hail and water damage claim on or about July 19, 2022 [Def.'s UMF No. 1]. The "facts of loss" section in State Farm's claim file reads: "final hail damage to the roof, causing interior leak in the pool room, pantry and kitchen, water damage to the flooring in the kitchen." [Doc. No. 38-2, at 2]. Hail is listed as the probable cause. *Id.* State Farm's claim file further reflects the following:

> Indicate the kind(s) of loss being reported: Hail, Water
> Where did the water come from? Heavy Rain/Storm

[Doc. No. 33-1, at 13]. On the day Plaintiff's claim was submitted, an AccuWeather report was generated in the claim file, which report "provides three years of hail history based on the Date Reported and Loss Location…" [Doc. No. 33-1, at 11]. The AccuWeather report provides:

| Date of Hail: | Hail Size (Inches) |
| --- | --- |
| 06/05/2022 | 0.75 |
| 05/04/2022 | 1.0 |
| 04/15/2022 | 1.75 |
| 07/17/2021 | 1.0 |
| 07/11/2020 | 2.25 |
| 08/26/2019 | 1.5 |

[Doc. No. 33-1, at 11].

External claim representative Connor Hounsel inspected Plaintiff's home on August 31, 2022 [Def.'s UMF No. 13]. Only Plaintiff and Mr. Hounsel were present [Doc. No. 33-1, at 2]. As noted in the claim file, Mr. Hounsel inspected all roof slopes and "found NO storm related hail damage" and found zero hail hits in each test square [Doc. No. 38-2, at 6]. Mr. Hounsel noted "[h]ail damage to turtle vents and copper dormers however

4

AccuWeather report shows no hail reported on this DOL." [Doc. No. 38-2, at 6].

Plaintiff testified that Mr. Hounsel did not tell her about his findings following the inspection on August 31, 2022 [Doc. No. 38-1, at 48 lns. 2-15]. On September 22, 2022, State Farm sent a letter to Plaintiff, in which Mr. Hounsel explained that "[b]ased upon the results of our discussion, site inspection and investigation, it was determined there was no accidental direct physical loss to roof shingles." [Doc. No. 38-14, at 2]. He adds that his "inspection discovered damages resulting from age and deterioration," and that "[d]amage from these perils is excluded by your policy." *Id.* Finally, Mr. Hounsel concludes that "no payment can be issued for the **non-covered damage found**." *Id.* at 3. In his letter, Mr. Hounsel does not notify Plaintiff that he discovered hail damage to the turtle vents and copper dormers on Plaintiff's roof. *Id.* at 1-3.

State Farm issued a payment of $2,638.29 to Plaintiff for interior water damage, which represented $18,963.82 in estimated damages, minus Plaintiff's deductible and depreciation [Def.'s UMF No. 14]. State Farm did not render any payment for the hail damage to turtle vents and copper dormers identified by Mr. Hounsel.

On September 26, 2022, Plaintiff requested a second inspection [Doc. No. 33-1, at 3]. On October 17, 2022, a State Farm claim specialist received a call from Plaintiff's agent's office inquiring what was needed for a second inspection. *Id.* The claim specialist advised the agent that State Farm needed photographs of damage Plaintiff believed was overlooked during the inspection and a contractor's estimate. *Id.*

On or about November 14, 2022, State Farm received photographs of Plaintiff's roof from her contractor, Destiny Roofing [Def.'s UMF No. 19]. On November 16, 2022,

Destiny Roofing sent State Farm a contract for a roof replacement, estimating a total price of $65,000.00 [Doc. No. 38-11].

On November 16, 2022, according to the claim file, State Farm claim specialist Misty Smith reviewed the additional photographs of Plaintiff's roof "and agreed [an] additional inspection would be necessary." [Doc. No. 33-1, at 3]. Ms. Smith notified Destiny Roofing about a second inspection, and Destiny Roofing "request[ed] to be present once scheduled." *Id.* Thereafter, Ms. Smith called Plaintiff "to discuss additional inspection and [Plaintiff] thanked [Ms. Smith] for time and appreciated the additional inspection." *Id.*

After Plaintiff was notified by Ms. Smith that an additional inspection would be scheduled, the claim was reassigned to claim representative J.R. Phillips "to review 2nd inspection request from Destiny Roofing." *Id.* Mr. Phillips decided that a second inspection was not warranted, making the following entry in the claim file:

> Initial loss filed for 7/19/22 DOL. No hail reported on that date per AccuWeather. Inspector looked at the roof with the insured present but no roofer. No damage was found to the roof surface, but did find water damage to the interior. He completed the interior repair estimate, and settled less the deductible. No storm related damage found to the roof. Roof leak from poor weather proofing and wear for DOL 7/19/22.

> File reopened with photos from roofer of circled blemishes to the roof. Photos show area consistent with wear, tear and blistering and do not show damage consistent with hail. No hail reported on the DOL, and this loss was for a leaking roof, which resulted in interior damage including hardwood flooring. Sending message to [Team Manager] for review, and advise whether a 2nd inspection should take place on this claim, or whether a 2nd claim should be filed for a date of loss that involves hail in the area, so another inspection of the roof could be completed. Roof appears to be 100 plus square, and the roofer only provided 15 photos.

[Doc. No. 33-1, at 2]. Upon review, team manager Carmen Richwine agreed that a second inspection was not warranted and stated that "[t]here was no damage identified to the roof and the cause of the interior leak was not able to be confirmed." *Id.*

The claim file further reflects that, when Mr. Phillips explained to Plaintiff via voicemail that her request for a second inspection was denied, he "[a]dvised she could file a new claim for hail with a specific date hail fell at her location, but from our inspection, and the photos provided by the roofer, the roof does not exhibit any damage consistent with hail impacts." [Doc. No. 38-2, at 4].

## DISCUSSION

### I.    Breach of Contract

State Farm moves for summary judgment on Plaintiff's breach of contract claim. To establish a breach of contract under Oklahoma law, Plaintiff must prove: "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001). State Farm provides that the policy covers accidental direct physical loss to the property, including damages caused by wind and hail, but does not provide coverage for ordinary wear and tear [Doc. No. 33, at 18].

State Farm contends that an inspection of Plaintiff's roof revealed "zero hail hits in any of [the] test squares" and no "storm-related damage to any slope." [Doc. No. 33, at 18]. Although State Farm's external claim representative did "note[] hail damage to turtle vents and copper dormers" on the roof, State Farm asserts it did not extend coverage for

Plaintiff's roof because "no storm-related damage was found on the shingles that coincided with the July 19, 2022 date of loss reported by Plaintiff." *Id.* at 18-19. State Farm extended coverage for "leaks caused by wind-driven rain" and ultimately made payment to Plaintiff in the amount of $2,638.29, the cost of the estimated repairs to the interior, minus Plaintiff's deductible and depreciation. *Id.* at 19.

In response, Plaintiff argues that State Farm is improperly focusing on July 19 as the date of loss when Plaintiff merely *reported* the claim on July 19 and told State Farm that she did not know when the loss occurred. Before Plaintiff's property was inspected by State Farm, State Farm knew, as reflected in its claim file, that "[Named Insured] DID NOT KNOW THE DOL." [Doc. No. 38-2, at 9]. Plaintiff has submitted a report by Sean Wiley, which includes photographs of purported hail damage to Plaintiff's roof and an opinion by Mr. Wiley that the extensive hail damage is consistent with the storm that occurred on April 15, 2022, during the term of Plaintiff's policy [Doc. No. 38-9]. Mr. Wiley opines that "[t]he asphalt shingled roof surface and associated metals were damaged by hail and such damage is easily visible and distinguishable from blisters." [Doc. No. 38-9, at 19].

Viewing the summary judgment record and all reasonable inferences therefrom in favor of Plaintiff, the Court finds there is a genuine dispute of material facts regarding whether Plaintiff's roof suffered hail damage covered under the policy. Accordingly, Defendant's motion for summary judgment is denied as to Plaintiff's breach of contract claim.

## II.     Bad Faith

State Farm argues it is also entitled to summary judgment on Plaintiff's bad faith claim. Plaintiff contends that State Farm breached its duty of good faith and fair dealing because State Farm "focused myopically on a fabricated date of loss; failed to consider significant hail storms near the time that [Plaintiff] noticed damage that she submitted as a hail and water leak claim; ignored [Plaintiff's] statement that she did not know the date of loss; misrepresented to [Plaintiff] there was no hail damage (despite known hail damage); violated the twenty-four month coverage period derived from 36 O.S. § 1250.5(7); required a second claim with another deductible over a fictitious date of loss issue; and imposed an extracontractual 'exclusion' of hail 'damage.'" [Doc. No. 38, at 24-25].

Under Oklahoma law, an insurer has an implied duty to deal fairly and act in good faith toward its insured, and the violation of that duty gives rise to an action in tort. *Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977); *see also Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (recognizing an "implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received."). "[A]n insurer's right to resist payment or resort to a judicial forum to resolve a legitimate dispute" is well-established. *Gov't Emps. Ins. Co. v. Quine*, 264 P.3d 1245, 1249 (Okla. 2011); *see also Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 725 (Okla. 2009); *Brown v. Patel*, 157 P.3d 117, 126-27 (Okla. 2007). "However, when presented with a claim by its insured, an insurer 'must conduct an investigation reasonably appropriate under the circumstances' and 'the claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient.'" *Newport v. USAA*, 11 P.3d 190,

195 (Okla. 2000) (citation omitted). An insurer's duty "to *timely* and *properly* investigate an insurance claim is intrinsic to an insurer's contractual duty to *timely* pay a valid claim." *Brown*, 157 P.3d at 122 (emphasis in original). "[I]f there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of [an] insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case." *McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981).

Upon consideration of the summary judgement record, viewed in the light most favorable to Plaintiff pursuant to Rule 56, the Court finds that genuine disputes of material facts preclude summary judgment on the issue of bad faith conduct. Plaintiff has presented minimally sufficient facts from which reasonable jurors could find that State Farm did not conduct a reasonable investigation under the circumstances. Plaintiff notified State Farm that she did not know the specific date of loss associated with her hail and water damage claim, which was reported on July 19, 2022. Notwithstanding that Plaintiff's claim always included a claim for hail damage, State Farm apparently relied on the date Plaintiff submitted her claim to deny coverage for hail damage since no hail fell at Plaintiff's property on that date. When Plaintiff asked State Farm for a second roof inspection for the hail damage, State Farm knew that 1) Plaintiff did not know the precise date of loss; 2) the roof showed evidence of hail damage, at least with respect to soft-metal components; and 3) an Accuweather report reflected a storm in Plaintiff's area that produced 1.75-inch hail on April 15, 2022, during the term of Plaintiff's policy. However, State Farm refused to perform a second inspection, stating that the pictures submitted by Plaintiff's roofer did not

warrant another inspection. This statement was contradicted by State Farm's own claim specialist, who noted in Plaintiff's claim file that she had reviewed the "photos received 11/14 previously and agreed additional inspection would be necessary." [Doc. No. 38-2, at 5]. After notifying Plaintiff that State Farm would be conducting a second roof inspection with Plaintiff's roofer present, State Farm subsequently re-assigned the file to J.R. Phillips, who decided that a second roof inspection was *not* warranted, which decision was confirmed by his team manager.

Despite being called to inspect Plaintiff's roof for a hail and water damage claim, external claim representative Connor Hounsel testified that he's "not there to document could-have-been hail," but rather "to document damages related to the claim of loss, which, again, was wind-driven rain, water damage to the interior." [Doc. No. 38-5, at 133, lns. 8-20]. Although Mr. Hounsel identified hail damage to the soft-metal components of Plaintiff's roof, State Farm told Plaintiff that there was no hail damage to her roof shingles, and no covered damage to her roof [Doc. No. 38-14, at 2-3]. Thereafter, Mr. Phillips left a voicemail for Plaintiff, "advis[ing] she could file a new claim for hail, with a specific date hail fell at her location, but from our inspection, and the photos provided by the roofer, the roof does not exhibit *any damage consistent with hail impacts*." [Doc. No. 33-1, at 2]. Mr. Phillips confirmed in his deposition that a second claim would have been subject to a second deductible [Doc. No. 33-6, at 54 lns. 6-16].

Viewing the summary judgment record in the light most favorable to Plaintiff, the Court finds that the reasonableness of State Farm's conduct to ensure that Plaintiff received the benefits of her insurance policy is reasonably subject to different conclusions.

Accordingly, State Farm is not entitled to summary judgment with respect to Plaintiff's bad faith claim.

### III.    Punitive Damages

Finally, State Farm contends that it is entitled to summary judgment on Plaintiff's claim for punitive damages. For punitive damages, "there must be evidence, at a minimum, of reckless disregard toward another's rights from which malice and evil intent may be inferred." *Badillo*, 121 P.3d at 1106. Viewing the facts and reasonable inferences therefrom in Plaintiff's favor, the Court finds that the genuine disputes of material facts with respect to Plaintiff's bad faith claim preclude summary judgment on punitive damages. At this juncture, the Court finds that a summary adjudication on punitive damages would be premature, and the Court will instead rule on whether punitive damages will be submitted to the jury based on the evidence offered at trial and with the benefit of a complete trial record.

### CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment and Brief in Support [Doc. No. 33] is **DENIED**. Within 10 days of this Order, the parties shall submit a joint status report or proposed scheduling order for the remaining unexpired deadlines.

**IT IS SO ORDERED** this 2nd day of May, 2025.

TIMOTHY D. DeGIUSTI
Chief United States District Judge